UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JANE CRAIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv-04079-SLD-JEH |
| | ) | |
| ROSEVILLE REHABILITATION AND HEALTH CARE, | ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

ORDER

Before the Court is Defendant Roseville Rehabilitation and Health Care's motion for summary judgment, ECF No. 25. For the following reasons, the motion is DENIED.

## BACKGROUND[1]

Jane Crain began working as a Certified Nursing Assistant ("CNA") in 1991 at a nursing home in Roseville, Illinois ("Roseville") operated by a company called American Health. She tore her right rotator cuff while working in 2008, and had two surgeries on her shoulder, making heavy lifting more difficult. Her doctor placed her under permanent weight restrictions, including: not lifting more than twenty pounds above the shoulder, not lifting more than thirty pounds to shoulder level, not carrying more than thirty-five pounds, and not pushing or pulling more than fifty pounds. Evaluation, Mot. Summ. J. Ex. 9.

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). The facts related here are taken from the parties' undisputed material facts, Mot. Summ. J. 2–6, Resp. Mot. Summ. J. 5–6, from Crain's list of disputed material facts, Resp. Mot. Summ. J. 7–24, and from the exhibits to the motion and response. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to Crain, the non-moving party, and draws all reasonable inferences in her favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson* v. Liberty Lobby, 477 U.S. 242, 255 (1986)).

When Crain returned to work, the Director of Nursing ("DON") (the parties cannot agree about who this was at this time) moved her from her job on the hospital floor and made her a transportation aide, because the job of transportation aide involved less lifting than working as a nurse on the hospital floor.[2] At some later point, the DON (now agreed to be Connie Jacobs) assigned Crain to work as a CNA on the hospital floor every other weekend. Crain was assigned to the hall with the least amount of lifting, and other CNAs would help her with the lifting she did have to do. While it is not clear exactly who at Roseville Crain told about her injury and restrictions upon returning to work, at least three of Crain's co-workers—Jacobs, Kendra Livingston, and Patty Anderson—testified to an awareness of Crain's inability to lift some heavy objects, and that this was the reason that she was assigned to the hall with the least amount of lifting. *See* Crain Dep. 41, Resp. Mot. Summ. J. Ex. 1; Livingston Dep. 10–11, Resp. Mot. Summ. J. Ex. 3; Anderson Dep. 8–9, Resp. Mot. Summ. J. Ex. 4. According to Anderson, who was DON in 2013, Crain's condition was generally known amongst the CNAs who worked at Roseville. Anderson Dep. 9.

In April 2010, Petersen Health Care – Roseville LLC ("Petersen"), the defendant in this case,[3] bought the nursing home from American Health. All employees who had worked for American Health and wanted to keep working at the nursing home had to submit new applications for employment. Crain's application for employment, which indicates that she

---

[2] Petersen endeavors to dispute the reason for Crain's reassignment by pointing out that only Crain testified that this was the reason for her reassignment. Reply 2–3. However, Petersen offers no other reason why this reassignment might have occurred, and it is not the Court's role at summary judgment to make credibility determinations. The Court views the evidence in the light most favorable Crain, and will accept her version of these facts. *See Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

[3] Crain named "Roseville Rehabilitation and Health Care" in her initial Complaint, ECF No. 1. Petersen appears to be the entity she seeks to sue, and the entity that has responded to her lawsuit. *See* Answer 1, ECF No. 9. For that reason, and to avoid confusion, the Court will refer to Defendant as "Petersen."

worked as a "CNA – transportation aide," states that she is in generally good health, but that "due to 2®shoulder surgeries can not lift over 35 lbs." Crain Application, Resp. Mot. Summ. J. Ex. 8, ECF No. 26. She also filled out a medical history form that asked her to list any conditions she had or had had "to determine an employee's ability to perform the essential functions of their [sic] position." Crain Medical History, Resp. Mot. Summ. J. Ex. 9. Crain checked boxes indicating that she suffered from a tingling sensation in her arms or fingers, had difficulty lifting, and had had a rotator cuff injury, arthroscopy, and back injury or "back symptoms." *Id.* In response to a question about whether a physician had ever restricted her activities, she wrote: "® shoulder – permanent lifting restriction – yes still under restriction." *Id.* She also described the dates of her surgeries, what kind of surgeries they were, and stated that she had been on leave for one year after the shoulder injury, returning with a "permanent lifting restriction." *Id.*

Petersen keeps detailed descriptions of the job responsibilities for both "transportation drivers" and CNAs.[4] According to these descriptions, a transportation driver must be able to lift objects weighing up to fifty pounds, carry objects weighing up to twenty-five pounds, and push or pull objecting weighing up to fifty pounds, and also be able to lift residents into and out of vehicles. Job Summ. – Trans. Driver, Mot. Summ. J. Ex. 11. A CNA must be able to lift objects weighing up to fifty pounds, carry objects weighing up to twenty pounds, and push and pull objects weighing up to one hundred pounds. Job Summ. – CNA, Mot. Summ. J. Ex. 12. While conceding the existence of these rules, Crain points out that the van she used as a transportation aide was equipped with a mechanical lift that lifted residents for her, and that Ethel Logue, who is alleged later to have fired Crain, admitted that Crain had been able to perform all the

---

[4] It is not clear whether these requirements, or similar ones, existed before the change in ownership of the nursing home.

requirements of the transportation aide job, as did Anderson. Similarly, Crain points to Livingston's testimony that as a CNA at Roseville, one was never called upon to carry more than 20 pounds. *See* Livingston Dep. 41. Livingston further opined that most of the things CNAs had to push were wheelchairs or lifts on wheels, and stated that she had never seen Crain unable to perform the duties of the CNA job. *Id.* at 48. So too, Jacobs stated that the only thing that a CNA or transportation aide would have to lift over 35 pounds would be a person, but that a lift would typically be used for that task. Jacobs Dep. 24–25, Resp. Mot. Summ. J. Ex. 2.

Nothing happened to Crain right away. Sometime between August 2013 and February 2014, Anderson asked Crain to work a twelve-hour shift as a CNA. Crain explained that her doctor had told her that she could not work twelve straight hours because of her shoulder. Anderson asked Crain "just . . . to write something for her" to support this request. Crain Dep. 66. Crain wrote a note saying she could not work for twelve hours at a stretch, and attached a doctor's note explaining her weight restrictions. *See* Evaluation. Anderson did not read this note, but put it in a drawer somewhere and scheduled Crain for eight-hour shifts, per her request.

When Anderson was replaced as DON, someone found Crain's note and gave it to Logue, an administrator. Logue, Crain, and Nancy Simmons had a meeting on March 18, 2014. Petersen claims that at the meeting, Logue told Crain that "she would need to provide a doctor's note stating that she could perform the physical requirements of the transportation driver position in order to continue working for Petersen." Mot. Summ. J. 5. However, Petersen supports the assertion by relying on Crain's deposition testimony, which reflects Crain's rather different version of events: that at this meeting Crain was "terminated," Crain Dep. 35, or "let go," *id.* at 78, *until* she could get a doctor's note indicating that she could work without restrictions

4

"because no one at Petersen homes could work with restrictions," *id.* In any event, Crain stopped working for Petersen, apparently from this day forward.

Crain filed the instant claim on September 4, 2014, Compl., ECF No. 1, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213 and/or the Rehabilitation Act, 29 U.S.C. §§ 701–718b, by terminating her employment. Petersen moved for summary judgment on April 4, 2016.

## DISCUSSION

### I.   Legal Standard on a Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." *Pipitone v. United States*, 180 F.3d 859, 861 (7th Cir.1999) (citation omitted).

### II.   Analysis

> The ADA both proscribes adverse employment treatment of an employee on the basis of the employee's physical or mental disability, 42 U.S.C. §§ 12112(b)(1)-(4), and imposes an affirmative duty on employers to make reasonable accommodations for the disabilities of an employee who can perform the essential

functions of her job with or without accommodation. 42 U.S.C. §§ 12112(b)(5)-
(7).

*Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 789 (7th Cir. 1999). The parties agree that Crain's complaint alleges claims for both adverse treatment under the ADA, commonly called a discrimination claim, and failure to make reasonable accommodations under the ADA. For either claim to be successful, Crain will have to show that she is or was a qualified individual with a disability. *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001) (explaining that both discrimination and failure to accommodate claims under the ADA must begin by making this showing). In addition, Crain would have to show that her employer was aware of her disability. *See Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999) (explaining that knowledge of the disability is an element of a failure to accommodate claim); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("We think that an employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability. This is supported both by simple logic and by the conclusions of other courts that have considered analogous issues."). Petersen moves for summary judgment on the grounds that Crain could not show a jury that she was a qualified individual with a disability, Mot. Summ. J. 10–14, and because she cannot show that Petersen knew about her purported disability, *id.* at 9.

    **a. Qualified Individual with a Disability**

Under the ADA, a qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In turn, "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having

such an impairment." *Id.* § 12102(1). And "essential functions" are determined not just by looking at an employer's job description, but by looking to a number of factors:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
>
> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

*Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 197–98 (7th Cir. 2011) (quoting 29 C.F.R. § 1630.2(n)(3)). The sixth and seventh of these factors in particular require a determining court to "look to evidence of the employer's actual practices in the workplace." *Miller*, 643 F.3d at 198.

First, Petersen argues that Crain has failed to put forward evidence of a disability sufficient to create an issue of material fact as to whether she was disabled. Mot. Summ. J. 9. A disability includes an impairment that substantially limits one or more major life activities, 42 U.S.C. § 12102(1)(A), and major life activities include lifting, *id.* § 12102(2)(A). Has Crain put forward evidence such that a jury could conclude that that her restrictions were a substantial limitation on lifting?

The ADA was amended in 2008, substantially expanding the Act's coverage. *See* ADA Amendments Act of 2008, Pub.L. No. 110–325, 122 Stat. 3553. Prior to this amendment, the Seventh Circuit had consistently held that lifting restrictions similar to Crain's did not, in and of themselves, constitute an ADA disability. *See, e.g.*, *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775,

7

782 (7th Cir. 2007) (inability to lift twenty-five to thirty pounds not a substantial limitation). Since the amendment, however, district courts in the Seventh Circuit have consistently held that such restrictions, in and of themselves, do constitute a showing of impairment of a major life activity sufficient to survive summary judgment. *See Galvin-Stoeff v. St. John's Hosp. of the Hosp. Sisters of the Third Order of St. Francis*, No. 11-3423, 2014 WL 4056695, at *9 (C.D. Ill. Aug. 15, 2014) (finding that a factual dispute about disability was sufficient to survive a motion for summary judgment where a woman who could not lift more than thirty pounds because of bulging discs); *Gatlin v. Vill. of Summit*, 150 F. Supp. 3d 984, 991 (N.D. Ill. 2015) (finding that a plaintiff who was restricted from lifting more than twenty pounds had made a showing of disability sufficient to survive summary judgment); *Dobosz v. Quaker Chem. Corp.*, No. 2:15-CV-203-PRC, 2016 WL 4376528, at *9 (N.D. Ind. Aug. 16, 2016) ("For purposes of this motion [for summary judgment], Dobosz's permanent restriction of lifting no more than thirty pounds constitutes a disability that substantially limits the major life activity of lifting."). The Seventh Circuit has not, since 2008, issued a ruling declaring at what point a lifting restriction is to be considered a substantial impairment. Regulatory guidance, however, suggests that a restriction of twenty pounds should be considered a substantial impairment. *See* 29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii) (2014) ("[S]omeone with an impairment resulting in a 20-pound lifting restriction . . . is substantially limited in the major life activity of lifting"). In addition, "[t]he definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A). A reasonable jury could determine that Crain's lifting restrictions constitute impairment substantially limiting a major life activity, and that she is thereby disabled within the meaning of the ADA.

Second, Petersen argues that Crain cannot show that she was able to perform the essential functions of her job with or without reasonable accommodation. Petersen argues that because both transportation aide and CNA jobs required employees to be able to lift more than Crain was able to lift, she could not perform the job with or without accommodation. If the job descriptions alone were dispositive, perhaps this would be so. Crain was not supposed to lift more than thirty pounds to shoulder height, or carry more than thirty-five pounds, and the job descriptions for both CNA and transportation aide require more. But, while the employer's judgment as to what a job requires is "an important factor . . . it is not controlling." *Miller*, 643 F.3d at 198. 29 C.F.R. § 1630.2(n)(3) directs courts to look to the current work experiences of other employees. Here, much of that evidence suggests that the official job descriptions upon which Petersen relies do not tell the whole story.

Crain testified that she was able to perform both the transportation aide and CNA jobs at Roseville for years, before and after her surgery and before and after the change in ownership. Crain Dep. 83. Jacobs opined that Crain's weight restrictions would not have prevented her from doing the job of either a CNA or transportation aide, and that mechanical lifts were used to move people, if they had to be lifted. Jacobs Dep. 17–18. Jacobs also stated that, during the period that Crain had worked for her, Crain had not been unable to perform any part of the job as a result of her lifting restrictions. *Id.* at 55. Jacobs also testified that the jobs of CNA and transportation assistant would not ever require someone to lift more than Crain was able to lift, except in the instance where a person had to be lifted, in which cases, a lift would be used. *Id.* at 17–18, 24–25. Anderson, who had also supervised Crain, had never found her unable to do her job either. Anderson Dep. 34–35. Petersen offers no evidence to rebut this testimony, either in the form of testimony describing what its CNAs and transportation aides actually do, or in the

9

form of evidence suggesting that Crain, who had been under lifting restrictions for roughly five years before her firing, was ever unable to meet Petersen's expectations as a transportation aide or CNA. Additionally, Petersen makes no representation as to what reasonable accommodation might be accorded to an employee with a lifting restriction, even though "[e]mployers must, at a minimum, consider possible modifications of jobs, processes, or tasks so as to allow an employee with a disability to work, even where established practices or methods seem to be the most efficient or serve otherwise legitimate purposes in the workplace." *Miller*, 643 F.3d at 199. Crain has made a sufficient showing, for purposes of summary judgment, that she could perform the jobs of transportation aide and CNA with or without reasonable accommodation.

Petersen suggests, relying on *Gratzl v. Office of Chief Judges of 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010), that Crain has failed to overcome the presumption that an employer's understanding of the essential functions of a job are correct. Reply 25, ECF No. 27. The argument confuses a requirement with a function. In *Gratzl*, the Seventh Circuit determined that an in-court reporter had not rebutted the presumption, created by her employer's understanding, that an essential function of her job was rotating through courtrooms. *Gratzl*, 601 F.3d at 679–80. But Crain has not disputed any of Petersen's views about what the functions of her job were. Rather, she has contested Petersen's estimation of the physical lifting capacity it took to perform those functions. And, as explained above, she has done so sufficiently to create a jury question about whether or not she possessed the capacity to perform the functions the job actually required, with or without reasonable accommodation.

### b. Knowledge of Crain's Disability

Petersen argues that Crain did not provide it with notice of her lifting restrictions, and thus, that it could not have had knowledge of those restrictions. Mot. Summ. J. 9. Petersen

states that this is so because "Crain provided a doctor's note issued to her former employer, American Health, prior to Petersen's purchase of Roseville . . . ." *Id.* However, both Crain's and Logue's deposition testimony is that at the meeting where Crain says she was fired, Logue told Crain that Crain had been violating her lifting restrictions by lifting more than she had been permitted to by her doctor. Logue Dep. 63–68; Crain Dep. 78 ("[Logue] told me that I was let go until I went to a doctor and got a note lifting my restrictions because no one at Petersen homes could work with restrictions."). Logue was a Petersen administrator. Add to this the fact that Crain submitted the doctor's note containing her lifting restrictions along with her note to Anderson, and that her application for employment, filed when Petersen took over the nursing home, clearly and repeatedly describes the nature of her lifting restrictions, with reference to doctor's diagnoses and recommendations. The record thus contains evidence from which a jury could infer that Petersen knew of Crain's lifting restrictions.

Petersen is splitting hairs by arguing that, while it may have known of a "lifting issue," this was not the same as Crain's "purported disability." Reply 23. As explained above, Crain's "lifting issue," understood as her inability to lift certain amounts of weight in certain ways, constituted her disability; there was nothing more for Petersen to know. *Wells v. Winnebago Cty., Ill.*, 820 F.3d 864, 867 (7th Cir. 2016), upon which Petersen seeks to rely, is thus inapposite. In *Wells*, the Seventh Circuit held that an employee who suffered from chronic fatigue syndrome had inadequately notified her employer of her disability by simply asserting that she needed an accommodation because she suffered from chronic fatigue syndrome, without providing any kind of doctor's diagnosis in support, and by stating that she suffered from anxiety. *Id.* at 867. Here, Crain related in detail, and with support by reference to surgeries and a doctor's diagnosis, and by providing a copy of that diagnosis, that she was under weight

11

restrictions which, as explained, a jury could construe as themselves constituting a disability.  *Cf. Ekstrand v. School District of Somerset*, 583 F.3d 972, 976 (7th Cir. 2009) ("[D]isabled employees must make their employers aware of any nonobvious, medically necessary accommodations with corroborating evidence such as a doctor's note or at least orally relaying a statement from a doctor, before an employer may be required under the ADA's reasonableness standard to provide a specific modest accommodation.").  Crain has made a showing sufficient for the purposes of summary judgment that Petersen was aware she suffered from a disability.

## CONCLUSION

Accordingly, Defendant Petersen's motion for summary judgment, ECF No. 25, is DENIED.  The final pretrial conference and jury trial in this case, which were vacated, are reset as follows:  the final pretrial conference is to be held on June 28, 2017 at 1:30 p.m. at the Rock Island courthouse, and the jury trial on July 24, 2017 at 9:00 a.m., also at the Rock Island courthouse.  The parties are directed to submit a proposed pretrial order by June 21, 2017 that shall conform in form and content to the requirements of Central District of Illinois Local Rule 16.1(F).

Entered this 21st day of March, 2017.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE